**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

WALKER J. REAHER, III,            )
                                  )
            Plaintiff,            )
                                  )            Civil Action No. 05-170 Erie
                                  )
            v.                    )
                                  )
JO ANNE B. BARNHART,              )
Commissioner of Social Security,  )
                                  )
            Defendant.            )

**MEMORANDUM OPINION**

McLAUGHLIN, J.

      Plaintiff, Walker J. Reaher, (hereinafter "Plaintiff" or "Reaher"), commenced the instant action pursuant to 42 U.S.C. §§ 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* Reaher filed an application for DIB on October 23, 2002, alleging that he had been disabled since December 31, 1995 due to Crohn's disease and osteoporosis (Administrative Record, hereinafter "AR", 211-213, 230). His application was denied, and Reaher requested a hearing before an administrative law judge ("ALJ") (AR 65-66). Following a hearing held on November 6, 2003, the ALJ found that Reaher was not entitled to a period of disability or disability insurance under the Act (AR 18-29, 36-50). Reaher's request for review by the Appeals Council was denied (AR 10-13), rendering the Commissioner's decision final under 42 U.S.C. § 405(g). The instant action challenges the ALJ's decision. Presently pending before the Court are cross-motions for summary judgment. For the reasons set forth below, we will deny the Plaintiff's motion and grant the Defendant's motion.

**I. BACKGROUND**

      Reaher was born on August 23, 1956, and was 47 years old on the date of the ALJ's decision (AR 22, 211). He has a high school equivalency degree and past relevant work experience as a van driver, lens grinder, data entry person for an eyeglass company, and a forklift

operator (AR 22, 236, 247).

Reaher has a history of alcoholism, including four attempts at detoxification prior to his alleged onset date of December 31, 1995 (AR 105, 115, 117, 119).

On December 20, 1995, Reaher was admitted to the hospital for acute exacerbation of his Crohn's disease (AR 121). Robert V. Kiel, D.O., noted that his Crohn's disease had been poorly controlled recently, producing nausea, vomiting and abdominal pain (AR 121). On January 2, 1996, Reaher underwent a resection of the terminal ileum with a right hemicolectomy (AR 121). He was discharged on January 12, 1996 with instructions to abstain from alcohol and all mood altering chemicals (AR 121-122). A colonoscopy conducted on February 23, 1996 showed aphthous ulcerations at the anastomotic site (AR 276).

Reaher was admitted into the hospital for eight days in April 1996 for alcohol detoxification (AR 147-148). Two months later in June 1996, he was again hospitalized for three days for alcohol detoxification (AR 149-151). In December 1996, Reaher was admitted for five days for alcohol detoxification (AR 153). Dr. Kiel noted that he had a history of Crohn's disease, which was poorly controlled and complicated by his active alcoholism (AR 153).

When seen by Dr. Kiel on March 5, 1997, Reaher complained of diarrhea and abdominal pain (AR 311). Dr. Kiel was reluctant to start him on 6MP due to his alcoholism, indicating he would consider it if Reaher remained sober for six months (AR 311). Reaher continued to complain of diarrhea on April 2, 1997 (AR 311).

On April 19, 1997, Reaher was hospitalized for five days for alcohol detoxification on an emergent basis due to withdrawal and progression of his Crohn's disease (AR 283-285). In December 1997, Reaher was admitted for ten days for alcohol detoxification (AR 286). He reported that he started to use crack cocaine (AR 286). Dr. Kiel noted that his medical history and withdrawal was complicated by his Crohn's disease (AR 286). While hospitalized, his diarrhea was controlled with steroids, Asacol and Imodium (AR 286).

On August 12, 1997, Reaher returned to Dr. Kiel complaining of increased diarrhea with abdominal pain (AR 311). Dr. Kiel increased his Asacol dosage (AR 311). In October 1997, Dr. Kiel noted that Reaher's compliance was too poor to risk 6MP and continued his Asacol (AR

2

310).  Reaher cancelled his December 1997 appointment due to his participation in a job training program (AR 310).

In April 1998, Reaher was hospitalized for alcohol detoxification for approximately one week (AR 289-291).  He reported that he had been drinking on a daily basis for approximately six months (AR 289).  Reaher had continued diarrhea and abdominal pain while hospitalized, and was restarted on Asacol, prednisone and Imodium (AR 289).  Reaher returned for seven days of alcohol detoxification, as well as treatment for abuse of benzodiazepines, marijuana, and other available drugs, in June 1998 (AR 292-293).  Dr. Kiel noted that Reaher had a long history of alcohol use and multiple detoxifications and treatments without significant nor sustained sobriety (AR 292).  Dr. Kiel further noted that his Crohn's disease had been poorly controlled due to his multiple relapses and continued nicotine use (AR 292).

In June 1998, Reaher's mother reported to Dr. Kiel's office that he would not appear at his appointment since he was headed back to detoxification (AR 309).  Reaher cancelled his July 1998 appointment, and failed to keep his appointment in November 1998 (AR 309).  When seen by Dr. Kiel in December 1998, he reported that his bowels had improved and he had less pain (AR 309).

Reaher cancelled his appointment with Dr. Kiel in January 1999 (AR 309).  In June 1999, he was hospitalized for six days for alcohol detoxification (AR 295-296).  Roger A. Esper, D.O., noted that Reaher had been in and out of detoxification programs more than seventeen times (AR 296).  Dr. Kiel noted that his condition was complicated by Crohn's disease and Reaher had been on steroids and five ASA products in the past (AR 295).  Reaher admitted that he had discontinued the medications and had not been on them for a while (AR 295-296).  In September 1999 and October 1999, Reaher was admitted for twelve days for alcohol and drug detoxification (AR 299-300).  On October 13, 1999, Reaher reported he was taking his prednisone and had decreased bowel movements (AR 307).

Treatment notes from Dr. Kiel's office in January 2000 show that Reaher's Crohn's disease was active (AR 187).

3

Reaher underwent a clinical psychological disability examination on March 1, 2000 performed by Martin Meyer, Ph.D. (AR 161-170). Reaher reported that he had undergone alcohol detoxification at least fifteen times, and had completed seven in-patient rehabilitation programs (AR 162). He had resided in a half-way house since Thanksgiving of 1999 (AR 161). Reaher relayed his prior work history, stating that he had been fired on three occasions for truancy (AR 161). He claimed he suffered chronic diarrhea and an erratic appetite due to Crohn's disease (AR 161-162). He further claimed he suffered from depression, with feelings of worthlessness and general sadness, which he attributed to alcohol withdrawal (AR 162). He reported no other emotional or mental problems, and felt he was emotionally "pretty stable" (AR 162).

On mental status examination, Dr. Meyer found his mood and affect were situationally appropriate (AR 163). His thought process was normal and relevant, he had an adequate fund of vocabulary, appeared to be of average intelligence with adequate learning abilities, and his ability for sustained concentration was adequate (AR 163). He had no difficulty with memory testing (AR 163). Dr. Meyer found he had difficulties with impulse control as evidenced by his substance abuse, and limited insight, but his social judgment was appropriate (AR 163-164). He was diagnosed with alcohol dependence, polysubstance abuse, substance induced mood disorder, nicotine dependence, and Crohn's disease (AR 164). Dr. Meyer assigned him a Global Assessment of Functioning ("GAF") score of 55,[1] and opined that he had a "fair" ability in nearly all areas of work functioning, but a "poor/none" ability to understand, remember and carry out complex job instructions (AR 165-166).

On April 5, 2000, Manella C. Link, Ph.D., a state agency reviewing psychologist, opined that Reaher was "not significantly limited" or only "moderately limited" in all areas of mental

---

[1]The GAF score considers psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. Scores between 51 and 60 indicate "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *See Diagnostic and Statistical Manual of Mental Disorders: DSM-IV-TR* 34 (4th ed. 2000).

work functioning (AR 180-182).

On April 11, 2000, Reaher reported ongoing diarrhea (AR 306).  Dr. Kiel noted that he had been sober six months, and discussed prescribing 6MP (AR 306).  In May 2000, Reaher complained of abdominal pain, but in June 2000 Dr. Kiel found that his bowels had improved and he had less diarrhea (AR 185).

On June 22, 2000, G. M. Dulabon, M.D., a state agency reviewing physician, concluded that Reaher was capable of performing work at the medium level (188-195).

Reaher failed to show for his appointment with Dr. Kiel on August 3, 2000 (AR 303). Reaher cancelled his appointment for August 23, 2000 since he "made too much money" and lost his medical assistance benefits (AR 303).  He indicated that he was "feeling okay," and was working as a tech at an optical lab (AR 303).

In February 2001 Reaher sought treatment in the emergency room for drug and alcohol ingestion (AR 373).  He returned to the emergency room in May 2001 for a possible overdose of Valium and alcohol a day after he was discharged from a detoxification program (AR 368).  He was discharged against medical advice (AR 368).  On June 21, 2001, Reaher sought treatment for a left elbow injury after falling on the concrete, but left elbow x-rays were negative for fracture (AR 365). He returned to the emergency room in July 2001 for treatment following a four day drinking binge (AR 359-363).  In October 2001, Reaher sought emergency room treatment for a fracture of his finger resulting from a fall (AR 352-356).  On November 11, 2001, David A. Klees, D.O., completed a Department of Public Welfare Employability Assessment Form and opined that Reaher was temporarily disabled from October 3, 2001 until November 30, 2001 due to a fractured finger (AR 774).

On January 7, 2002, Reaher presented to the emergency room after drinking a significant amount of alcohol and swallowing "lots of Klonopin" and reported that he wanted to kill himself (AR 706).  He was diagnosed with acute benzodiazepine ingestion, alcohol intoxication, suicide attempt, and Crohn's disease (AR 708).  Reaher returned to the emergency room in February 2002 after being hit in the face during a fight while intoxicated (AR 339-351).  In May 2002, Reaher sought treatment in the emergency room for burning chest pain, and was diagnosed with

gastritis/esophagitis (AR 329).  Thirteen days later he was treated for a closed head trauma and bruises on his legs due to a fall while intoxicated (AR 321, 325).

When seen by Dr. Klees on April 9, 2002, Reaher complained of an increase in loose stools due to his Crohn's disease (AR 484).  On April 10, 2002, Dr. Klees wrote a letter to Reaher's job seeker specialist at Pennsylvania Career Link opining that Reaher would be employable without any restrictions as of December 20, 2002 (AR 731-732).  On May 9, 2002, Dr. Klees completed a form for Reaher to obtain several medications to control his symptoms of Crohn's disease to enable him to work (AR 772).  However, on May 27, 2002, Dr. Klees completed a DPW form indicating that Reaher was temporarily disabled until August 31, 2002 due to Crohn's disease (AR 771).

In June 2002, Reaher sought emergency room treatment for hemorrhoids (AR 319).  He returned to the emergency room in July 2002 for treatment of a fractured wrist after he was "forced into a car" in a hit and run accident (AR 412-418).  Nine days later his wrist was rechecked because he fell again (AR 407-410).  Diagnostic studies showed no change in his wrist fracture (AR 409).  On July 5, 2002, Reaher was treated for a perirectal abscess (AR 449).  He returned to the emergency room on July 16, 2002 complaining of rectal drainage and pain with general malaise (AR 420-421).

Reaher was seen by Dr. Klees on August 23, 2002, and reported recent surgery of the perirectal abscess, but had no other complaints (AR 479).  He reported that he was doing well on medication, and that his spastic episodes leading to diarrhea were reduced to one to two times a day (AR 482).  On September 20, 2002, Reaher reported that he was "not doing bad" but was under a lot of stress and trying to get a job (AR 479).  He complained of right hip pain of unknown trauma, with difficulty getting out of bed at times (AR 479).  Dr. Klees prescribed Celebrax (AR 480).

A bone density study conducted on October 2, 2002 revealed osteopenia (AR 404).  On October 3, 2002, Dr. Klees completed a DPW form indicating that Reaher needed certain medications to control his symptoms of Crohn's disease to enable him to work (AR 772).  On October 10, 2002, Dr. Klees completed a DPW form opining that Reaher was temporarily

disabled until April 30, 2003 due Crohn's disease with frequent exacerbations and osteopenia /osteoporosis (AR 768). Reaher returned to Dr. Klees on October 28, 2002, and complained of continuing problems with his Crohn's disease, stating it was worse in the mornings and that he went to the bathroom five to six times between 5:30 a.m. and 9:00 a.m. (AR 480). He also felt his perirectal abscess was returning since he was experiencing rectal pain  (AR 480).   Reaher continued to complain of deep hip pain, and walked with a limp (AR 480).

On November 1, 2002, Reaher was hospitalized for alcohol and drug detoxification for approximately four days (AR 379-388). He reported that he had been drinking daily around the clock for the past several weeks (AR 379). The attending physician noted that Reaher had a long standing history of substance and alcohol abuse, was noncompliant with his after care plans, and had no significant period of continuous sobriety (AR 379). He underwent successful detoxification, but it was noted that he continued to exhibit poor insight and no motivation (AR 380).

In December 2002, Reaher was admitted to the hospital for five days for treatment of intractable diarrhea, diagnosed as an exacerbation of Crohn's disease (AR 541-542). Stool cultures were negative, and x-rays showed a minimal adynamic ileus (AR 541, 600). He was treated with intravenous steroids and showed significant improvement (AR 541). He was prescribed medication and discharged in stable condition (AR 541).

Reaher underwent a disability examination performed by Bharathi S. Voora, M.D., performed on February 6, 2003 (AR 394-398). Reaher reported he was unable to work due to abdominal pain and frequent diarrhea, although he indicted that his mother felt he was capable of working (AR 394-395). He reported bowel movements eight to ten times per day, and had just been prescribed Lomotil the previous day (AR 395). He claimed he drank alcohol and beer occasionally, and was fired from jobs because he suffered from diarrhea (AR 395). He further claimed he had multiple hospital admissions because of his Crohn's disease, and had a history of chronic anxiety and depression (AR 396). On physical examination, Dr. Voora noted that Reaher was well-developed and well-nourished (AR 397). His abdomen was not distended, bowel sounds were present, and no abdominal tenderness was present (AR 397).

7

Dr. Voora indicated that Reaher would probably respond to his new medication, but if he did not, he could increase his dosage amounts (AR 397-398).  His hypertension, general anxiety problem and depression were under good control (AR 398).  Dr. Voora opined that once the Lomotil started working, he would be employable with a twenty-five pound weight restriction, and could at least work a part-time job fours hours per day (AR 398).  Dr. Voora completed a medical source statement of Reaher's ability to perform work-related activities and opined that he could lift up to twenty-five pounds, and had no other restrictions, but needed to be close to a bathroom (AR 399-400).

On January 22, 2003, Reaher underwent a consultative examination performed by Ann M. McDonald, M.D. (AR 389-391).  Reaher reported numerous inpatient hospitalizations for substance abuse, but indicated that he had been sober since the end of October 2002 (AR 389).  He described himself as an anxious person, and took Paxil daily (AR 389).  He reported a history of Crohn's disease, but stated that his condition had improved following medication changes (AR 390).  On mental status examination, he reported being an anxious person with some degree of depression, and also reported he was very impulsive (AR 390).  He denied paranoid ideation, magical thinking and hallucinations (AR 390).  Dr. McDonald found that Reaher was capable of insight and was able to interpret simple proverbs (AR 390).  He was able to perform serial three testing, but not serial seven testing (AR 390).  Dr. McDonald further found that he had some memory difficulty, but had average to slightly above average intelligence (AR 391).  Dr. McDonald diagnosed Reaher with generalized anxiety disorder, and alcohol opioid addiction (AR 391).  She assigned him a GAF score of 45 (AR 391).[2]

Dr. McDonald completed a medical assessment of Reaher's ability to perform work-related mental activities, opining that he had a "good" ability to understand, remember and carry out detailed and simple job instructions; a "fair" ability to follow work rules; deal with the public; use judgment; interact with supervisors; maintain attention/concentration; understand,

_____

[2]Scores between 41 and 50 indicate "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  *Id.*

remember and carry out complex job instructions; maintain personal appearance; behave in an emotionally stable manner; relate predictably in social situations; and demonstrate reliability; and a "poor/none" ability to relate to co-workers; deal with work stresses; and function independently (AR 392-393).  Dr. McDonald also opined that he had significant medical problems with Crohn's disease (AR 393).

On March 6, 2003, Dr. Klees completed a DPW Employability Re-Assessment Form and opined that Reaher was permanently disabled due to Crohn's disease (AR 489-490).  On March 10, 2003, Reaher sought emergency room treatment while intoxicated for anxiety and depression, but left against medical advice (AR 638).  He returned for treatment a short time later, stating that he had consumed two more beers and taken two Klonopins (AR 636-638).

On April 2, 2003, Reaher presented to the emergency room for treatment of abdominal pain and diarrhea (AR 614).  He admitted to drinking four beers (AR 614).  An abdominal x-ray was normal, with no acute pathology noted (AR 621).  Reaher did not wait for his lab results and signed out against medical advice (AR 614).  On April 4, 2003, Reaher underwent a barium enema with air contrast, which revealed that his prior surgery had a patent anastomosis, as well as evidence of a mild stricture of the distal small bowel at the level of the anastomosis (AR 612). He returned to the emergency room the next day complaining of severe abdomen pain and diarrhea (AR 605).  An x-ray revealed a non-obstructive bowel gas pattern and residual barium from the recent test (AR 606).  He was prescribed pain medication and instructed to follow up with his family physician (AR 605).

Progress notes from Dr. Klees' office from January 2003 through June 2003 reveal that Reaher continued to complain of loose stools approximately five times per day (AR 674-680).  In June 2003 he was referred for diagnostic studies (AR 675).  An upper GI study conducted on June 26, 2003 revealed a mucosal irregularity compatible with Reaher's history of Crohn's disease and probable proximal colon diverticulum (AR 710).

Finally, on December 10, 2003, Reaher underwent a colonoscopy with biopsy (AR 778-779).  Biopsy results showed moderate acute and chronic inflammation and benign lymphoid aggregates highly suspicious for inflammatory bowel disease (AR 780).  Results were negative

for adenomatous changes, glandular epithelial dysplasia, granulomata and malignant neoplasm (AR 780).

Reaher and Karen Krull, a vocational expert, testified at the hearing held by the ALJ on November 6, 2003 (AR 36-60). Reaher testified that he suffered from abdominal pain daily due to his Crohn's disease, but did not take any pain medications (AR 42-43). He claimed he used the restroom approximately seven to eleven times per day and at times had accidents, but wore no protective clothing (AR 43). He took a daily nap for two to three hours due to fatigue (AR 44). He testified that he had last consumed alcohol eight months before the hearing, but did not attend Alcoholics Anonymous or any other support group (AR 44-45). He was able to lift up to thirty pounds, and had worked numerous part-time jobs from 1995 through 2001 (AR 45-50). He claimed he was let go from several jobs due to frequent restroom use (AR 46-50). Reaher further claimed that although his Crohn's disease was under control for a period of time, it had "flared up" since October of 2002, and he had been hospitalized in December 2002 (AR 50-51). He felt he was unable to work given the current condition of his Crohn's disease (AR 51).

The ALJ asked the vocational expert if work existed for an individual of Reaher's age, education and past work experience, who was limited to light work with reasonable restroom access, consisting of no more than routine, repetitive tasks with one- or two-step instructions performed in a low-stress environment that required few decisions and no more than occasional contact with the public and co-workers (AR 54-55). The vocational expert testified that such an individual could perform light work positions as a kitchen worker, janitor/cleaner, as well as the sedentary positions of alarm monitor, assembler, and production inspector (AR 55-57). The vocational expert further testified that all of the positions would permit restroom use for short periods outside of break times (AR 57).

Following the hearing, the ALJ issued a written decision which found that Reaher was not entitled to a period of disability or disability insurance within the meaning of the Social Security Act (AR 21-29). Reaher's request for an appeal with the Appeals Council was denied making the ALJ's decision the final decision of the Commissioner (AR 10-13). He subsequently filed this action.

## II. STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)); *see Richardson v. Parales,* 402 U.S. 389, 401 (1971). It has been defined as less than a preponderance of evidence but more than a mere scintilla. *See Richardson,* 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.,* 48 F.3d 114, 117 (3d Cir. 1995).

## III. DISCUSSION

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a five-step evaluation process to determine when an individual meets this definition:

> In the first two steps, the claimant must establish (1) that he is not engaged in "substantial gainful activity" and (2) that he suffers from a severe medical impairment. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). If the claimant shows a severe medical impairment, the [Commissioner] determines (3) whether the impairment is equivalent to an impairment listed by the [Commissioner] as creating a presumption of disability. *Bowen,* 482 U.S. at 141. If it is not, the claimant bears the burden of showing (4) that the impairment prevents him from performing the work that he has performed in the past. *Id.* If the claimant satisfies this burden, the [Commissioner] must grant the claimant benefits unless the [Commissioner] can demonstrate (5) that there are jobs in the national economy that the claimant can perform. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd Cir. 1985).

*Jesurum*, 48 F.3d at 117.

In considering steps two through five of the evaluation process, the ALJ divided the relevant time period into three periods chronologically: (1) December 31, 1995 through April 18, 1997; (2) April 19, 1997 through November 4, 2002; and (3) November 5, 2002 through the date

of his decision (AR 22-23).  The ALJ found the medical evidence established that Reaher had

Crohn's disease during all three periods (AR 23).  For the second and third periods, the ALJ

found that the evidence showed he suffered from substance abuse, anxiety and depression (AR

23).  For a portion of the relevant time period, namely, the second period, the ALJ found that

Reaher's substance abuse met the severity of Listing 12.09, but absent his alcohol abuse, he was

able to work within the parameters of the adopted residual functional capacity (AR 24).

The ALJ concluded that absent Reaher's substance  abuse being a material factor, he had

the residual functional capacity to perform light work with reasonable restroom access,

consisting of no more than routine, repetitive tasks with one- or two-step instructions performed

in a low-stress environment that required few decisions, and no more than occasional contact

with the public and co-workers (AR 25).  While Reaher was unable to perform his past work, the

ALJ determined that he could perform the jobs cited by the vocational expert at the

administrative hearing (AR 27).   The ALJ additionally determined that Reaher's subjective

complaints regarding his limitations were not fully credible (AR 28).  Again, we must affirm this

determination unless it is not supported by substantial evidence.  *See* 42 U.S.C. § 405(g).

Reaher essentially challenges the ALJ's application of Public Law 104-121 in

determining that he was not entitled to benefits.  More specifically, he alleges that the ALJ's

finding that his substance abuse was a contributing factor material to a finding of disability was

not supported by substantial evidence, and that the ALJ improperly evaluated the medical

evidence of record.

On March 29, 1996, Congress passed the Contract with America Advancement Act of

1996 which in part amended the Social Security Act to preclude recovery of benefits by a person

whose alcoholism or drug addiction contributes materially to his or her disabling condition.  *See*

Pub. L. No. 104-121 § 105(a)(1), § 105(b)(1), 110 Stat. 847, 852-53 (1996) (codified as amended

at 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J) (1998)); *see also Torres v. Chater*, 125 F.3d 166,

169 (3d Cir. 1997).  The amendment effectively barred the award of disability benefits based on

alcoholism or drug addiction.  *Torres*, 125 F.3d at 169.  The amendment provides, "An

individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or

drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2) (1998); 42 U.S.C. § 1382c(a)(1)(J).  The amendment only applies if the claimant's impairments render him or her disabled and if there is medical evidence of drug addiction or alcohol abuse.  *See* 20 C.F.R. §§ 404.1535(a), 416.935(a).

As the implementing regulations provide, the issue is simply whether the claimant would still be disabled if he or she stopped using alcohol or drugs.  *See id.* §§ 404.1535(b)(1), 416.935(b)(1).  If so, then the claimant is entitled to benefits; if not, then the alcohol or drugs is a contributing factor and the claimant is precluded from receiving benefits.  *See id.* §§ 404.1535(b)(2), 416.935(b)(2).  The adjudicator is to resolve the issue by evaluating which of the claimant's limitations "would remain if [the claimant] stopped using drugs or alcohol" and by analyzing whether those remaining limitations are disabling.  *Id.*

The ALJ found that Reaher was disabled, but also found that his substance abuse was a contributing factor material to a finding of disability (AR 23-24).  Reaher argues that the ALJ's decision is not supported by substantial evidence because "[n]o hospital record, [and] no treating doctor's record declares that without alcohol abuse, the Crohn's disease would be healed." *Plaintiff's Brief* pp. 9, 11.  However, the issue is not whether Reaher's Crohn's disease would be healed absent substance abuse; rather, the issue is whether absent such abuse, would his condition prevent him from working.

Here, the ALJ found that Reaher's Crohn's disease was a severe impairment, and he had a long history of the disease (AR 23, 26).  He further found that Reaher's history of the disease supported his testimony of abdominal pain and frequent use of the restroom (AR 26).  The ALJ noted however, that he had only been hospitalized once for the condition, and that the frequency of restroom use to which he testified was not supported by the objective medical evidence (AR 26).  He observed that Reaher took no pain medication, did not wear protective clothing, and was able to live alone (AR 26).  Finally, the ALJ found that the condition was clearly limiting, but not to the extent that he could not perform light and sedentary work with reasonable restroom access (AR 26).

13

All of these findings are supported by the record, and Reaher has failed to demonstrate that his Crohn's disease prevented him from working. The medical evidence reflects that, at a minimum, Reaher has undergone inpatient detoxification at least ten times, and according to him, at least fifteen times (AR 147-151, 162, 283-286, 289-293, 299-300, 379-388). Dr. Esper noted in June 1999 that he had been in and out of detoxification programs more than seventeen times (AR 296). In addition, he has presented to the emergency room on multiple occasions for treatment related to his substance abuse and/or for injuries suffered while intoxicated (AR 321, 325, 339-356, 359-363, 368, 373, 706).

Moreover, the ALJ's finding that Reaher was not disabled if he abstained from alcohol or drug abuse is further supported by Dr. Voora's opinion. Dr. Voora performed a physical examination of Reaher pursuant to the request of the Commissioner, and opined that he would be employable with a twenty-five pound weight restriction once his medication started working (AR 398). Dr. Voora further opined that Reaher had no other restrictions, but needed to be close to a bathroom (AR 399-400). We also reject Reaher's contention that Dr. Klees' opinion that he was temporarily or permanently disabled is entitled to controlling weight. We note that his opinions are inconsistent with his own statements provided on welfare forms recommending that Reaher be provided medications to enable him to work (AR 768-772). His opinions are also contradicted by his statement to Pennsylvania Career Link that Reaher would be able to work as a patient care technician when his training course ended in December 2002 (AR 731-732).

Further, the record, fairly read, demonstrates that Reaher's Crohn's disease was reasonably controlled with medication. While hospitalized for detoxification in December 1997, his diarrhea was controlled with medication (AR 286). In October 1999, he reported that he was taking his prednisone and had decreased bowel movements (AR 307). In June 2000 Dr. Kiel noted that his bowels had improved and he had less diarrhea (AR 185). When seen by Dr. Klees in August 2002, he reported that he was doing well on medication, and that his spastic episodes leading to diarrhea were reduced to one to two times a day (AR 482). When treated with steroids for an exacerbation of his disease in December 2002 (his only hospitalization for the condition), he showed significant improvement (AR 541).

14

Reaher also argues that the ALJ erred in rejecting Dr. McDonald's opinion.  Dr. McDonald opined that Reaher had a good ability to understand, remember and carry out detailed and simple job instructions; a fair ability to follow work rules; deal with the public; use judgment; interact with supervisors; maintain attention/concentration; understand, remember and carry out complex job instructions; maintain personal appearance; behave in an emotionally stable manner; relate predictably in social situations; and demonstrate reliability; and no ability to relate to co-workers; deal with work stresses; and function independently (AR 392-393).  Dr. McDonald also opined that he had significant medical problems with Crohn's disease (AR 393). The ALJ considered Dr. McDonald's reported findings but concluded that her opinions were based on Reaher's subjective complaints, and she did not indicate what part of his addiction to alcohol and drugs played in her assessment (AR 24).

We find no error in this regard.  Pursuant to the Commissioner's regulations, in evaluating an examining physician's opinion, the ALJ considers a number of competing factors, including, *inter alia*, the extent to which the opinion is supported by a logical explanation, the degree of the medical source's specialization in a relevant field, and the extent to which the source's opinion is consistent with the entirety of the evidence.  *See generally* 20 C.F.R. § 416.927(d)(1)-(6).  The ALJ evaluated Dr. McDonald's opinion consistent with this standard.

First, we observe that Dr. McDonald's opinion with respect to Reaher's mental limitations was at odds with Dr. Meyer's opinion, who found Reaher had only moderate symptoms, and opined that he had a fair ability in all areas of mental functioning (AR 165-166). To the extent Reaher contends that the ALJ erred in rejecting her opinion that his Crohn's disease caused significant medical problems, we note that Dr. McDonald was not evaluating Reaher's *physical* condition; her expertise is in the area of psychiatry.  Moreover, Dr. McDonald's opinion with respect to Reaher's physical condition is inconsistent with Dr. Voora's conclusion that he was employable once his medication started working.  Finally, the ALJ incorporated any limitations with respect to his impairments in fashioning his RFC by restricting him to light work with reasonable restroom access, consisting of no more than routine, repetitive tasks with one- or two-step instructions performed in a low-stress environment that required few decisions, and no

15

more than occasional contact with the public and co-workers (AR 25).

## IV. CONCLUSION

Based upon the foregoing reasons, the Commissioner's final decision will be affirmed. An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

WALKER J. REAHER,                  )
                                   )
              Plaintiff,           )
                                   )        Civil Action No. 05-170 Erie
                                   )
              v.                   )
                                   )
JO ANNE B. BARNHART,               )
Commissioner of Social Security,   )
                                   )
              Defendant.           )

## ORDER

AND NOW, this 19th day of December, 2005, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment, or alternatively, Motion for Remand [Doc. No. 12] is DENIED, and the Defendant's Motion for Summary Judgment [Doc. No. 13] is GRANTED.  JUDGMENT is hereby entered in favor of Defendant, Jo Anne B. Barnhart, Commissioner of Social Security, and against Plaintiff, Walker J. Reaher, III.  The clerk is directed to mark the case closed.


                                   s/ Sean J. McLaughlin
                                   United States District Judge

cm: All parties of record.

17